# MORTIMER CUMMINGS, Administrator, vs. J. FRANK ROBINSON.

*Appeal from Orphans' Court—Power of Orphans' Court to Rescind Order Discharging an Administrator and to Require an Accounting from Him.*

A petition in the Orphans' Court alleging that one of two administrators has not properly accounted for money which he received jointly with the other administrator is not a petition alleging a concealment of assets, and consequently an appeal from an order of that Court passed thereon is not governed by the provisions of Code, Art. 93, sec. 239, relating to orders passed concerning concealment of assets.

One of two administrators filed a petition in the Orphans' Court asking to be discharged from that office and alleged that no assets of the estate had been received by him. An order *nisi* was passed and no

cause to the contrary having been shown a final order was passed discharging the petitioner. Some months afterwards the other administrator filed a petition setting forth that he and his said co-administrator had received a certain sum of money a part of which had been deposited in bank and a part of which had been retained by the discharged administrator and asked that the latter be required to account therefor. The answer admitted the receipt of the money and alleged that the sum retained was in pursuance of an agreement between the parties by way of settlement of respondent's claim against the decedent and for what might be allowed to him as commissions. Code, Art. 93, sec. 38, authorizes the Orphans' Court to release and discharge an administrator or executor upon his petition therefor accompanied by a full account of his receipts and disbursements, if no good cause be shown to the contrary. *Held*, that the order discharging the administrator having been passed under a mistake as to existing facts should be rescinded and that he should be required to render an account of his disposition of the assets of the estate.

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE SCHMUCKER and JONES, JJ.

*Allan C. Girdwood,* for the appellant.

*H. K. Brooks* (with whom was *A. M. Sproesser* on the brief ), for the appellee.

JONES, J., delivered the opinion of the Court.

This is an appeal from the Orphans' Court of Baltimore City. The first thing appearing in the record is a petition filed in that Court by the appellee on the 11th day of April, 1901, in which he alleged that, together with the appellant, he had, on the 6th of April, 1901, been appointed administrator of Mary E. Cummings, deceased ; that he desired "to retire from the duties of administrator, he not being able to attend to the same on account of business, and as there has been no assets received by him and the said co-administrator is the sole distributee," he prayed to be relieved "from the performance of his duty as administrator." This petition was filed in pursuance of the provisions of sec. 38 of Art. 93 of the Code Public General Laws, which authorizes the release

and discharge of administrators by the Orphans' Courts upon application made, and regulates the manner of proceeding upon such application. The Orphans' Court upon the filing of this petition, by order passed on the same day, directed publication to be made that unless good cause were shown to the contrary on or before a day named in the order, the said Robinson "be released and discharged from the further performance of his duty as one of the administrators of Mary E. Cummings deceased." The day named in the order just referred to, on or before which cause was to be shown, etc., was the 18th of April, 1901, on which day, no cause having been shown to the Court to the contrary, the Court passed a final order that the said Robinson be released and discharged as he had prayed in his petition.

On the twentieth of November, 1901, the appellant filed in the Orphans' Court a petition which, after alleging the grant of letters of administration to himself and Robinson on the estate of Mary E. S. Cummings, the filing of the before-mentioned petition by the appellee (Robinson), and the release by order of Court of the appellee from the administration, further alleged that he (appellant), denied the statement in appellee's said petition that no assets of the estate had come into appellee's hands and avers that appellee on the tenth of April, 1901, received jointly with himself (appellant), "the sum of $2,900.55 from the Savings Bank of Baltimore and had subsequently jointly with " himself " deposited with the Fidelity and Deposit Company of Maryland the sum of $2,300 leaving the sum of $600.55 unaccounted for at the time of his (appellee's) petition, and that a part of this sum of $600.55 was retained by the said J. Robinson," and that he (appellant), was consequently unable to render a satisfactory account to the Court. The petition further alleged that the release and discharge of the appellee " was obtained by fraud and perjury perpetrated" upon the Court; and then prayed the Court to order the appellee " to bring the portion of the $600.55 retained by him into " Court " to be turned over to the remaining administrator," to amend the order of the eleventh of April, 1901, and

order the appellee "to render an account of all his transactions with the funds of the estate from the date of the death of the intestate or from his first connection therewith; and that the order of the eleventh of April be amended by inserting therein a proviso that the appellee "shall render a full, complete and satisfactory account of all money or other property that has come into his hands."

The appellee upon being cited to answer the foregoing petition appeared in Court by attorney and on the second day of December, 1901, filed an answer thereto in which he denies that he filed his petition for release from the administration, because he did not wish to continue as administrator; and avers that he asked for the release by reason of the "overtures and importunate requests to him made" by the appellant to induce him to discontinue his connection with the administration and in pursuance of an agreement between him and appellant; that appellant was fully aware of the passage of the order of release; "and had ample time and opportunity to interpose" any objection thereto. He denies the allegation of fraud and perjury in connection with the obtaining of his release but admits the receipt by him and appellant jointly of the $2,900.55, the deposit of the $2,300 with the Fidelity and Deposit Company and the retention of the $600.55 substantially as alleged in appellant's petition. With regard to the $600.55 he explains that $400 of this amount was paid to him "in accordance with the terms of the agreement referred to" in the preceding part of his answer, by way of settlement of certain claims against the estate of the deceased for services rendered her in her lifetime, and for what might be allowed him as commissions; and that the $200.55 that remained of the said sum was retained by the appellant, his co-administrator, in his possession. The answer then avers that the appellant's petition states no such case as entitles him to relief and prays the benefit of this defense as fully as if made by demurrer.

The Orphans' Court seems to have held this defense last set up in the answer to be sufficient and on the 12th of December, 1901, ordered the appellant's petition to be dismissed

with costs.   From such order this appeal was taken.   The appellee contends that the appeal is improperly brought to this Court because the case made by the pleadings falls within the purview of sections 239 and 240 of Article 93, Code Pub. Gen. Laws and the appeal properly lies to the Superior Court of Baltimore City.   An examination of appellant's petition of the 20th of November, 1901, shows however that it was not filed with reference to conditions provided for in section 239. Its allegations do not make a case to which that section applies.   To give the Orphans' Court jurisdiction under the provisions of the section of the Code in question, it must be alleged and shown either that the administrator "has concealed, or has in his hands and has omitted to return in the inventory or list of debts" some part of his decedent's assets.   In this case no concealment is alleged ; nor is it alleged that the money for which an accounting is sought is not included in, or has been omitted from, the inventory which it is the duty of the administrators to return to the Court.   On the contrary it appears that this money has been recognized, and treated, as part of the assets of the decedent by both parties to this controversy ; and for aught that appears it constitutes a part of the inventory of the estate returned, or which it was the duty of these administrators to return to the Orphans' Court.   It is simply charged that this money so recognized and treated as part of the assets of the decedent by all parties concerned has not been properly accounted for to the Court by one of the administrators who jointly with his co-administrator became possessed of it as such assets.   The case would seem clearly to be one to be dealt with by the Orphans' Court under the powers conferred by sections 230 and 231 of Article 93 Code.   *Muncaster, Extr.,* v. *Muncaster et al.,* 23 Md. 286.

Nor is the Orphans' Court precluded from now requiring an accounting of the appellee under the powers conferred by the two sections just referred to by reason of its order of the 18th of April, 1901, releasing him from further duty as administrator.   By sec. 38 of Art. 93, Code, under which the Court

proceeded in granting release to the appellee, it is provided that when an administrator desires, and proceeds, to avail of its provisions he shall file his petition "accompanied by a full and particular account, under oath, of his   *   *   *receipts and disbursements*, if any, as such   *   administrator ; and the said Court upon the filing of such petition *and accounts* shall have jurisdiction in the premises ;" and after notice given as prescribed "if no good cause be shown to the contrary" shall release the administrator so petitioning, &c.   When the Orphans' Court by its order in this case discharged the appellee from further duty in his office as administrator it did not require of him an account.   This was because by his petition under oath he informed the Court that no assets of his decedent had come to his hands to be accounted for.   We cannot suppose the Court would have discharged him in clear violation of its duty without requiring of him an account if it had then been known that assets had in fact come to his hands as administrator ; or if the Court had not been misled into the belief that no assets had come to his hands by the sworn allegation of his petition to that effect.   It now appears by his own admissions upon the face of the pleadings that not only, at the time of filing his petition for release, had assets come to his hands, but he had undertaken also the disbursement of a portion of these assets in settlement of claims set up by him against the estate of the deceased for services rendered her in her lifetime and for payment of commissions to himself for services as administrator.   The order of the Orphans' Court releasing him was therefore passed upon a clear mistake of the facts existing at the time.   It was the plain duty of the appellee to have rendered an account to the Court of the assets that came to his hands and how he had applied them or any part of them.   He could not acquit himself of the duties of his office without doing so ; and for the purpose of this accounting he is still administrator and under control of the Court to that extent; and it is the right and duty of the Court to rescind its order of the 18th of April, 1901, and to require of the appellee a full accounting of his receipt and

disposition of such of the assets of his decedent as came into his hands.

The power of the Orphans' Court to correct mistakes of this character cannot now be doubted.   In the case of *Bantz, Extr.,* v. *Bantz et al.,* 52 Md. 686, it was said: "This Court has repeatedly said, that so long as an estate is open (which means not finally closed and settled) the accounts of the executor or administrator, in that Court are subject to revision and correction as to any matter discovered to be in error." The case here is within the principle enunciated in the case just cited.   The law requires of a party coming to the Court as the appellee did asking for a release that he shall account, etc.   The account which the appellee rendered was that there were no assets that had come to his hands which the Court now finds was error.   In this connection reference may be made to the case of *Collier* v. *Cross,* 20 Ga. 1, where it was expressly held that "if the ordinary grants a discharge under a mistake that the estate has been fully administered he has power to vacate it."   The arrangements made, and the understanding had, by the appellee with his co-administrator in relation to the assets which came to their hands, and which he sets up in his answer as a defense to appellant's petition cannot, if true, avail him.   He cannot escape the duty of rendering the proper account under the supervision and control of the Orphans' Court because he has improperly and irregularly dealt with the assets of the estate he was to administer with the knowledge, connivance or participation of his co-administrator.   It follows from the foregoing views that the order of the Orphans' Court appealed from in this case must be reversed and the cause remanded to that Court for its action therein in accordance with the opinion of this Court.

> *Order reversed with costs to the appellant and cause remanded.*

(Decided April 1st, 1902.)