HAYMAN, Adm'r c.t.a. Of The Estate Of Caroline Huffington Slocumb *v.* MESSICK

[No. 90, September Term, 1968.]

*Decided February 10, 1969.*

The cause was argued before HAMMOND, C. J., and McWIL-LIAMS, FINAN, SINGLEY and SMITH, JJ.

*W. Edgar Porter,* with whom was *Lewis C. Merryman* on the brief, for appellant.

*J. Owen Wise* for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 29 July 1967, Caroline Huffington Slocumb, 87 years of age, died domiciled in Caroline County, Maryland. Mrs. Slocumb had executed a holographic will on 1 March 1962, which she apparently had prepared without assistance, since it neither appointed an executor nor disposed of her residuary estate. The will did, however, contain a devise of property in Florida to "my cousins, Mr. and Mrs. Gale Messick" and bequests of

$1,000 each to Maude Hayman Robinson and Morris Hayman of Salisbury, who were not otherwise identified.

On 31 July, the will was filed with the Register of Wills for Caroline County by Mrs. Messick, who proved custody. Subsequently, the witnesses proved their signatures, and on 26 September Morris W. Hayman filed a petition for a grant of letters cum testamento annexo (c.t.a.). A week later, a similar petition was filed by L. Gale Messick. The Hayman petition identified Mr. Hayman and Maude Hayman Robinson as first cousins and next of kin of the decedent. The Messick petition identified 12 of the decedent's cousins as her next of kin, including Mr. Messick, Mr. Hayman, and Mrs. Robinson. On 3 October 1967, the will was admitted to probate by the Orphans' Court for Caroline County, and letters of administration c.t.a. were granted to Messick, who then gave bond and entered upon his duties.

Hayman appealed to the Circuit Court for Caroline County from the orphans' court's order granting letters to Messick and its refusal to grant letters to him. The appeal was dismissed by a stipulation which recognized that Hayman, as a first cousin and next of kin of the decedent, was properly entitled to the grant of letters. On 27 December 1967, the orphans' court revoked the letters granted to Messick and granted letters *de bonis non* (d.b.n.) c.t.a. to Hayman.

By this time, however, Messick had given notice to creditors; had filed an inventory of his decedent's personal property, which aggregated some $74,000, and had paid certain administration expenses and the decedent's funeral expenses. On 3 January 1968, on petitions presented by Messick, the orphans' court authorized the payment of funeral expenses of $1,450.00 and allowed commissions of $1,308.22 to Messick and a fee of $750.00 to his counsel for services in connection with the administration. On the same day Messick filed an administration account, distributing the net assets of the estate to Hayman, as administrator d.b.n.c.t.a.

Sometime thereafter, Hayman determined to mount an attack on Messick's administration. For reasons not clear to us, Hayman elected not to file exceptions to Messick's administration account. 2 Sykes, *Probate Law and Practice* (1956) §§

869-871 at 14-21. Instead, he filed a petition in the orphans' court on 25 January which recited that since the grant of letters to Messick was erroneous, the appointment was void *ab initio*; that all of Messick's acts should be deemed a nullity; and that Messick should be required to file a "statement and account" of the decedent's property and of "transactions made and carried on." Another thrust/ was directed at Hayman's own appointment as administrator d.b.n., the theory being that this was not what he had sought, and that an appointment d.b.n. could not properly follow an appointment which was wholly void. When the court failed to enter any order, Hayman filed a second petition on 19 February, asking that an order be passed. When no action was taken on this, and Messick failed to answer, Hayman filed a third petition on 26 February, seeking an order requiring Messick to answer. No order was entered on the third petition, but a hearing was held on 28 March. The transcript shows that at the conclusion of the hearing, Chief Judge Brackett said, "This Court feels that we are going to let the d.b.n. stand and we are not going to alter anything that we have done up to this time."

On 22 April 1968, Hayman filed a notice of appeal:

> "Please enter an appeal to the Court of Appeals of Maryland from all adverse rulings of the Court on March 28, 1968, on the Petitions of Morris W. Hayman, Administrator C.T.A. of Caroline Huffington Slocumb, deceased, filed herein on January 25, 1968, February 16, 1968, and February 23, 1968."

Maryland Code (1957, 1968 Repl. Vol.) Art. 5, § 9 provides: "Any party may appeal to the Court of Appeals from any decree, order, decision or judgment of an orphans' court." Code (1957, 1964 Repl. Vol.) Art. 93, § 281 provides:

> "In all cases of plenary proceedings, * * * where any motion or application to the court shall be made in writing, *it shall be the duty of the court to reduce to writing, and sign the order or decree that may be made by them on such motion or application;* and the said motion or application to the court and the order

or decree thereon shall be filed as a part of the proceedings, and, in case of appeal from the final decree of the orphans' court, be transmitted to the appellate court with the other proceedings, and be subject to the judgment and revision of such appellate court." (Emphasis added)

Were it not for the italicized language, which would seem to impose upon the court the duty of entering a written order from which an appeal could be taken, we would be inclined to dismiss Hayman's appeal from the "adverse rulings" of the orphans' court. We have repeatedly held that an appeal will lie only from a judgment absolute at law, but not from a judgment nisi, *Merlands Club, Inc. v. Messall,* 238 Md. 359, 208 A. 2d 687 (1965), and from a written order or decree and not from comments by or the opinion of the court, *Ballan v. Ballan,* 251 Md. 737, 248 A. 2d 871 (1969) ; *Bell v. Shifflett,* 249 Md. 104, 238 A. 2d 533 (1968) ; *Kennedy v. Foley,* 240 Md. 615, 214 A. 2d 815 (1965). The more desirable practice would dictate that orphans' courts, which are courts of special and limited jurisdiction, confined to the letter of their authority, Code, Art. 93, § 287; *Crandall v. Crandall,* 218 Md. 598, 147 A. 2d 754 (1959), act with the same formality. Nevertheless, we shall assume, for the purposes of this opinion, that the orphans' court, at the conclusion of the hearing on 28 March, entered a written order or orders, denying the relief sought in Hayman's petition of 26 February. *Compare Watson v. Watson,* 58 Md. 442 (1882) where our predecessors accepted a stipulation of counsel as to the signing of an order.

Hayman urges (i) that since Messick's appointment was procured by a misrepresentation of fact, it was void *ab initio,* and that all of his acts as administrator c.t.a. are invalid; and (ii) that the orphans' court erred when it refused to require Messick "to file under oath a statetment other and broader than the first and final account he filed."

i

Code, Art. 93, § 41 provides:

"All acts done by any executor or administrator ac-

cording to law, before any actual or implied revocation of his letters, shall be valid and effectual, * * *."

Hayman argues, and we think correctly, that the statutory umbrella protects only the personal representative who acts *according to law,* and not the individual who is guilty of fraud or deceit, citing *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295 (1954) and *Lutz v. Mahan,* 80 Md. 233, 30 A. 645 (1894). As we see it, these cases are clearly distinguishable from the case before us. In *Watkins,* letters c.t.a. had been granted to the decedent's first cousin once removed, who represented himself as her next of kin. The grant of letters was revoked on petition of first cousins of the half blood, none of whom had been given notice of the probate or had appeared at or before the time of probate. In *Lutz,* letters of administration had been granted to a petitioner on a representation, made by another person, that the petitioner was the decedent's only son, when in fact there were two daughters and an older son, to whom no notice had been given. The letters were revoked, as if the administration had never taken place.

The facts in *Watkins* and *Lutz* are in sharp contrast to those before us. Mrs. Slocumb died on 29 July 1967. Her will was filed on 31 July. On 26 September, Hayman filed his petition for letters, identifying himself and Maude Hayman Robinson as first cousins and only surviving next of kin. On 3 October, Messick filed his petition, identifying 12 persons, including himself, as "cousins" and next of kin of the decedent. In addition to the petitions, the court had before it on 3 October, the day when letters were granted to Messick, a renunciation signed by Mrs. Robinson, relinquishing her right to administer, and Mrs. Slocumb's will, which described Messick as her "cousin," but did not identify Hayman or Mrs. Robinson in any way. Entirely absent from these proceedings was the element of "undue haste" which the Court found in *Lutz.* It is not surprising, under these circumstances, that the court adopted a minute:

"In the case of CAROLINE HUFFINGTON SLOCUMB in which Morris Hayman and L. Gale Messick each applied for letters of administration c.t.a., the Court accepts as fact that both L. Gale Messick

and Morris Hayman are cousins of CAROLINE HUFFINGTON SLOCUMB. We feel that the deceased was closer to L. Gale Messick because she made her home with him. She named him first in her will. She left him the largest bequest. We could not consider residue of estate as there is no way for us to determine at this point the number of residuary legatees. Therefor, the Court decides that letters of administration c.t.a. be granted to L. Gale Messick, the will of the said CAROLINE HUFFINGTON SLO-CUMB having been duly admitted to probate. Bond was filed and approved; notice to creditors was issued."

As it turned out, the court had made a mistake, not because of any fraud or deceit practiced upon it, but because information respecting the degree in which Hayman and Messick were related to Mrs. Slocumb was either not available to the court or, if available, was not accorded proper significance. An orphans' court has the power to revoke a grant of letters improperly made because of a mistaken state of facts. *Watkins v. Barnes, supra; Silverwood v. Farnan,* 180 Md. 15, 22, 22 A. 2d 444 (1941); *Mitchell v. McCormick,* 143 Md. 328, 332, 122 A. 245 (1923); *Dalrymple v. Gamble,* 66 Md. 298, 305, 7 A. 683, 8 A. 468 (1887).

We are inclined to agree with Messick's argument that this case is controlled by *Blum v. Fox,* 173 Md. 527, 197 A. 117 (1938) where Blum's appointment as administrator of the estate of Mrs. Kanauff was revoked at the instance of an illegitimate son whose existence was unknown to Blum at the time proceedings were commenced. Letters of administration d.b.n. were granted to the son, who then filed exceptions to the account returned by Blum. In the course of the opinion, our predecessors recalled the powers and duties of the original administrator:

"All acts done by the executor or administrator in conformity with law, before any actual or implied revocation of his letters, are valid and effectual. Code, art. 93, sec. 37 [now § 41], and section 243 [now § 259], as amended by Laws 1931, ch. 437; *Parker v. Leigh-*

*ton,* 131 Md. 407, 418, 102 A. 552. So, when letters of administration are revoked, the administrator affected must forthwith render an account, and the Orphans' Court has jurisdiction to determine what assets shall be chargeable against the administrator and what credits shall be given and allowances made. Code, art. 93, secs. 256, 245, and section 243 [now §§ 276, 263 and 259, respectively], as amended by Laws 1931, ch. 437; *Kealhofer v. Emmert,* 79 Md. 248, 251, 252, 29 A. 68; *Anderson v. Curran,* 155 Md. 538, 543, 142 A. 719; *Scott v. Fox,* 14 Md. 388; *Gephart v. Strong,* 20 Md. 522; *Muncaster v. Muncaster,* 23 Md. 286; *Cooke v. Cooke,* 29 Md. 538; *Wilson v. McCarty,* 55 Md. 277, 279-284; *Gavin v. Carling,* 55 Md. 530, 536; *Hoffman v. Hoffman,* 88 Md. 60, 40 A. 712; *Linthicum v. Polk,* 93 Md. 84, 94, 48 A. 842; *Cummings v. Robinson,* 95 Md. 83, 87-89, 51 A. 1105; *Crothers v. Crothers,* 121 Md. 114, 118, 119, 88 A. 114.

"If, upon the revocation, there shall be no remaining executor or administrator, it is the duty of the Orphans' Court to appoint a new administrator; and thereupon the party whose letters have been revoked must, within a reasonable time to be fixed by the court, deliver to the new administrator all the property of the decedent remaining in the first administrator's hands unadministered, and also all the books, bonds, notes, and evidences of debts or funds, and all title to property or stocks which belong to or are due, or which may become due, to the decedent, in the first administrator's possession, and also pay over to the new administrator all the money due to him as administrator of the decedent. A compliance with this order may be enforced by attachment and sequestration of the property of the delinquent, and the court may direct his administration bond to be put in suit. Code, art. 93, sec. 257 [now § 277]; *State, use of Stockbridge v. Smith,* 64 Md. 101, 106, 20 A. 1037." 173 Md. at 533-34.

As we see it, since Messick's appointment was the result of

a mistake, and not induced by fraud or deceit, the revocation of his letters did not invalidate his acts, and it required that Hayman be appointed administrator c.t.a.d.b.n., when Hayman succeeded Messick as administrator.

ii

Hayman's second contention, that the court erred in not permitting him to maintain plenary proceedings against Messick, must fail for procedural reasons.

His first petition was filed 25 January 1968; his second, 19 February 1968; and his third, 26 February 1968. The Orphans' Court for Caroline County meets each Tuesday, and if we assume that the relief prayed in the first two petitions was denied with proper formality, the orders would have been entered on Tuesday, 30 January and on Tuesday, 20 February. An appeal from each of these orders would have had to be entered within 30 days. Rule 812 a. Messick's appeal was taken on 22 April.

The third petition, filed on 26 February, sought the same relief: that Messick be required to answer. Even if we assume that the third petition was the subject of the March 28 hearing (and the record is by no means clear in this respect),[1] Hayman cannot maintain an appeal from the dismissal of the third petition.

Nothing is more certain than the proposition that an appeal will not lie from a court's refusal to reopen a previous decision. As our predecessors said in *Lefever v. Lefever,* 6 Md. 472 at 478 (1854):

> "* * * If parties could open decrees and judgments, on appeal, in this indirect way, it would virtually amount to a repeal of the laws limiting the time within which appeals should be taken, and would lead to interminable litigation."

*Accord, Robin Express, Inc. v. Cuccaro,* 247 Md. 262, 230 A. 2d 671 (1967) ; *Standard Founders, Inc. v. Oliver,* 168 Md. 317,

1. The court's language was, "* * * [W]e are going to let the d.b.n. stand and we are not going to alter anything that we have done * * *."

178 A. 2d 223 (1935); *Gold Dust Corporation v. Zabawa,* 159 Md. 664, 152 A. 500 (1930).

Hayman's failure to take a timely appeal does not mean that he is without redress. If there is a defect in Messick's administration account, it can be corrected by the filing of an exception, if taken in timely fashion, *Scott v. Fox,* 14 Md. 388 (1859), and alleged uncertainties with respect to assets of the decedent not included in the estate subject to probate can be resolved by an appropriate proceeding in equity. *McKenney v. McKenney,* 214 Md. 397, 135 A. 2d 423 (1957); *Berman v. Leckner,* 193 Md. 177, 66 A. 2d 392 (1949); *Turk v. Grossman,* 176 Md. 644, 6 A. 2d 639 (1939). *See also, Constable v. Camp,* 87 Md. 173, 39 A. 807 (1898).

From the record before us, we cannot discern that the proceeding below or the appeal before us was of benefit to the estate. Since the awarding of costs is discretionary, Rule 882 a, the estate should not be reduced by an appeal from which it could not benefit. *Watkins v. Barnes, supra,* 203 Md. at 526.

> *Orders affirmed; costs of the appeal to be paid by appellant individually.*